OPINION OF THE COURT
Mark I. Partnow, J.
*509 Defendant City of New York moves for an order, pursuant to CPLR 3212 and/or 3211 (a) (7), dismissing plaintiffs’ complaint in its entirety. Plaintiffs Steven Destefano and Patricia Destefano, in turn, cross-move for an order, pursuant to CPLR 3212, granting summary judgment on the issue of liability under Labor Law § 240 (1) against the City.
Factual Background
The instant action arises out of an accident which occurred on January 29, 2003, when the plaintiff Steven Destefano sustained injuries after falling from a ladder while working at a building located at 356 Sumpter Street, Brooklyn, New York. At the time of the incident, the building, which was a 20-family multiple dwelling, was owned by the City. Sometime prior to the accident, S.J. Fuel Company, a contractor, was hired by the City to install an emergency temporary boiler at the premises because the existing boiler was broken beyond repair. At the time, plaintiff was employed by S.J. Fuel as a boiler technician. Plaintiff was assisted by his brother, Dominick Destefano, who was also a S.J. Fuel employee.
In an affidavit submitted herein, the plaintiff avers that the task of installing a temporary heating/boiler system to the subject premises involved inserting three industrial hoses into the building and connecting them to the existing boiler’s pipes. Two of the hoses were required to bring hot steam and hot water into the premises, and the third was required to draw cold water from the building into the temporary mobile boiler unit. The work also involved running and connecting a cable from the mobile unit to the electricity panel located within the building. All three hoses had to run through a hole located in the back of the City’s building. According to plaintiff, the existing six-inch hole initially only provided access for one of the hoses. As a result, plaintiff had to make the hole larger so that it could accommodate all three of the hoses and the electrical cable. In order to accomplish this task, plaintiff claims that he used a sledgehammer and chopped a hole through the cinder block wall until the opening was approximately 16 to 18 inches in circumference. Additionally, plaintiff contends that in order to connect the hoses to the building, welders from his company had to cut openings in the broken boiler’s steel pipes. After the openings were made, the workers welded the flanges onto the pipes so that the hoses from the temporary boiler could connect to the building’s pipes.
*510 At the time of the accident, plaintiff was in the process of disconnecting the hoses from the mobile boiler unit because it was not functioning properly. In order to reach the hoses, which were elevated above the mobile unit, the plaintiff used an A-frame ladder, which had been provided by his employer, S.J. Fuel. The ladder was in the closed position and placed leaning up against the mobile unit. Plaintiff climbed up the ladder approximately eight feet above the ground. While he was standing on the ladder, a heavy portion of one of the hoses caught onto his clothing, causing plaintiff to lose his balance. As a result of being pulled by the hose, the ladder shifted and both the ladder and plaintiff fell to the ground. Plaintiff sustained injuries as a result of his fall. Plaintiff claims that the ladder was unsecured and lacked nonskid feet. In addition, plaintiff claims that he was not provided with any other safety devices to gain access to the area in which he was working.
Plaintiff subsequently brought the instant action against the City on or about May 29, 2003, alleging violations of Labor Law § 240 (1), § 241 (6) and § 200, as well as common-law negligence, and his wife brought a derivative claim. Issue was joined by the service of the City’s answer on or about August 26, 2003. The City now moves to dismiss plaintiffs’ complaint in its entirety. In response, the plaintiffs do not oppose the City’s motion to the extent it seeks dismissal of their Labor Law §§ 200 and 241 (6) and common-law negligence claims. Plaintiffs argue, however, that the City is liable to them under Labor Law § 240 (1) and have, in turn, requested that this court grant them summary judgment on the issue of liability under said statute.
Discussion
Labor Law § 240 (1)
The City asserts that the activity in which the plaintiff was engaged at the time of the injury is not the type of activity covered under Labor Law § 240 (1). In this regard, the City maintains that the plaintiff was merely providing temporary boiler/heat service, and was not making any “alteration” or “repair” to the building within the meaning of the statute. Moreover, the City points out that, at the time of the accident, the plaintiff was in the process of disconnecting a hose from the mobile boiler unit, which involved no significant change to the building.
In opposition to the City’s motion and in support of their cross motion, the plaintiffs argue that the injured plaintiff was *511 protected under the statute at the time of the accident because the work that he was performing was ancillary to the installation of the temporary boiler project, which constituted an “altering” under Labor Law § 240 (1). In particular, plaintiffs maintain that enlarging the hole through the building’s cinder block wall in order to connect the hoses to the existing boiler, and welding the flanges on the boiler pipes, resulted in a significant change to the building.
Labor Law § 240 (1) affords protection to construction site workers who are exposed to elevation-related hazards (see generally, Blake v Neighborhood Hous. Servs. of N.Y. City, Inc., 1 NY3d 280, 287-290 [2003]). Specifically, section 240 (1) provides, in pertinent part, that:
“All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
Labor Law § 240 (1) requires property owners and contractors to furnish or cause to be furnished safety devices, such as ladders and scaffolds, which are “so constructed, placed and operated as to give proper protection” to workers. In order to impose liability under the statute, a plaintiff must demonstrate that the statute was violated and that the violation was a contributing cause of his or her injuries (see Blake, 1 NY3d at 287). Moreover, “the duty imposed by Labor Law § 240 (1) is nondelegable and ... an owner or contractor who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over the work” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; see also Haimes v New York Tel. Co., 46 NY2d 132, 136-137 [1978]). Finally, the statute is to be construed as liberally as possible in order to accomplish its protective goals (see Martinez v City of New York, 93 NY2d 322, 326 [1999]). However, given the absolute liability imposed under Labor Law § 240 (1), only those workers engaged in the activities specifically enumerated in the statutory language are protected under Labor Law § 240 (1) (id. at 326; Joblon v Solow, 91 NY2d 457, 464 [1998]; Luthi v Long Is. Resource Corp., 251 AD2d 554, 555 [1998]).
*512 In the present case, the court finds that plaintiff was engaged in a process involving the building’s “alteration” within the meaning of Labor Law § 240 (1) (see Joblon, 91 NY2d at 465; Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 881-882 [2003]; see also Mannes v Kamber Mgt., 284 AD2d 310, 311 [2001]). The Court of Appeals case Joblon (91 NY2d at 465) is instructive here. There, the Court held that “altering” for purposes of section 240 (1) “requires making a significant physical change to the configuration or composition of the building or structure.” In that case, the Court determined that extending wiring and chiseling a hole through a concrete wall was enough to constitute “altering.”
In the instant matter, although at the time of the injury the plaintiff was disconnecting a hose from the mobile unit, there is sufficient evidence in the record establishing that the plaintiff was a member of a team that undertook an activity (installation of a temporary boiler system) which involved, inter alia, enlarging a hole in the building’s cinder block wall, welding flanges onto the existing boiler’s pipes, and running/connecting cable from the mobile unit to the building’s electricity panel (see Prats, 100 NY2d at 882).* Construing section 240 (1) liberally so as to accomplish its purpose of protecting workers (see Martinez, 93 NY2d at 326), the court holds that the overall task of installing a temporary boiler in the subject building constitutes an “alteration” within the meaning of the statute, and that plaintiff is therefore protected thereby even if he was not directly involved in making alterations to the building at the time he was injured. Indeed, although the occurrence giving rise to injury must have happened during a pendency of a covered task, plaintiff need not have been performing such a task at the time of the accident. In Prats (100 NY2d at 882), the Court of Appeals held that the intent of Labor Law § 240 (1) was to protect workers employed in the type of activity enumerated in *513 the statute even while performing duties ancillary to those acts. Thus, since the activity that plaintiff was performing at the time of the accident (disconnecting the hoses from the mobile boiler unit) was ancillary to the temporary boiler installation project, which constituted an alteration of the subject building, the court finds that plaintiff was entitled to the protection of Labor Law § 240 (1) (id.; see Danielewski v Kenyon Realty Co., 2 AD3d 666 [2003]; see also Joblon, 91 NY2d at 465; Bedassee v 3500 Snyder Ave. Owners Corp., 266 AD2d 250 [1999]). Accordingly, the City’s motion to dismiss plaintiffs’ Labor Law § 240 (1) claim is denied.
However, the mere fact that the statute applies to the work that the injured plaintiff was performing at the time of the accident does not establish that plaintiffs are entitled to summary judgment under their Labor Law § 240 (1) claim. It is well settled that “[a] fall from a ladder, by itself, is not sufficient to impose liability under Labor Law § 240 (1)” (Olberding v Dixie Contr., 302 AD2d 574, 574 [2003]; see Costello v Hapco Realty, 305 AD2d 445 [2003]; Khan v Convention Overlook, 232 AD2d 529 [1996]). There must be proof that the subject ladder was defective before a court may award plaintiffs summary judgment (see Williams v Dover Home Improvement, 276 AD2d 626, 627 [2000]; Avendano v Sazerac, Inc., 248 AD2d 340, 341 [1998]).
Here, plaintiffs uncontradicted affidavit, that the ladder was unsecured and lacked safety feet, and that he was not provided with any other safety devices, provides a sufficient evidentiary basis for the purposes of summary judgment. Regardless of whether the accident was the result of plaintiff being struck by a portion of the hose and losing his balance, it is clear that the ladder used by plaintiff was not an adequate safety device for the task plaintiff had been directed to perform (see Ben Gui Zhu v Great Riv. Holding, LLC, 16 AD3d 185 [2005]; Dunn v Consolidated Edison Co. of N.Y., 272 AD2d 129 [2000]). Indeed, it is undisputed that the ladder failed to prevent plaintiff from falling. Nor is it disputed that the ladder was the only safety device provided to plaintiff (see Gordon v Eastern Ry. Supply, 82 NY2d 555, 561-562 [1993]; Quackenbush v Gar-Ben Assoc., 2 AD3d 824 [2003]; Dunn, 272 AD2d at 129; Guillory v Nautilus Real Estate, 208 AD2d 336, 337-338 [1995]). Moreover, the City has not produced any evidence disputing facts that the ladder was unsecured or that it lacked safety feet. Thus, the City’s failure to furnish a safety device sufficient to protect plaintiff *514 against the elevation-related risk posed by the assigned work constituted a breach of the duty imposed by Labor Law § 240 (1) (see Gordon, 82 NY2d at 561; compare, Weber v 1111 Park Ave. Realty Corp., 253 AD2d 376 [1998]). Accordingly, the court holds that the plaintiffs are entitled to partial summary judgment on the issue of liability under Labor Law § 240 (1) (see Lacey v Turner Constr. Co., 275 AD2d 734 [2000]; Guzman v Gumley-Haft, Inc., 274 AD2d 555 [2000]).
Labor Law § 200 and Common-Law Negligence
As to plaintiffs’ Labor Law § 200 cause of action, it is well settled that this section is a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (Yong Ju Kim v Herbert Constr. Co., 275 AD2d 709, 712 [2000]). To establish liability against an owner or general contractor pursuant to Labor Law § 200, it must be established that the owner or general contractor exercised supervision and control over the work performed at the site, or had actual or constructive notice of the allegedly unsafe condition (see id.; Aranda v Park E. Constr., 4 AD3d 315 [2004]; Kanarvogel v Tops Appliance City, 271 AD2d 409, 411 [2000]; Akins v Baker, 247 AD2d 562, 563 [1998]).
Here, it is undisputed that the City did not direct or supervise plaintiffs work at the site. Furthermore, there is no evidence that the City had prior notice of any alleged dangerous condition at the site. Moreover, the court notes that the plaintiffs do not oppose the dismissal of these claims. Accordingly, that branch of the City’s motion seeking to dismiss plaintiffs’ Labor Law § 200 and common-law negligence claims is granted.
Labor Law § 241 (6)
That branch of the City’s motion seeking to dismiss plaintiffs’ Labor Law § 241 (6) claim is also granted. In order to state a claim under Labor Law § 241 (6), a plaintiff must identify a specific Industrial Code provision mandating compliance with concrete specifications (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993]). Inasmuch as the plaintiffs have failed to allege any specific violation of the Industrial Code, and have not opposed this aspect of the City’s motion, this cause of action must also be dismissed (see Rojas v County of Nassau, 210 AD2d 390 [1994]).
Conclusion
In sum, that branch of the City’s motion seeking to dismiss plaintiffs’ Labor Law §§ 200 and 241 (6) and common-law *515 negligence claims is granted and said claims are hereby dismissed. That branch of the City’s motion seeking to dismiss plaintiffs’ Labor Law § 240 (1) claim is denied. The plaintiffs’ cross motion for summary judgment on the issue of liability under Labor Law § 240 (1) is granted.

 The court rejects the City’s argument that the plaintiffs affidavit should be disregarded because it contradicts his prior deposition testimony regarding the work he performed. Contrary to the City’s contention, the court finds that plaintiffs affidavit includes allegations that are consistent with his prior deposition testimony regarding the work he was doing on the date of the accident. At his 50-h hearing, when asked how he brought the hoses into the building, plaintiff testified that either two or three hoses were brought through a cinder block wall located in the back of the building. Additionally, plaintiff testified that the welders, who were part of his company, had to weld fittings onto the boiler’s pipes in order to facilitate the connection of the hoses. Thus, in this court’s view, plaintiffs affidavit does not contradict his deposition testimony and will be considered herein.